IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDIE LEVERT, WALTER WILLIAMS,<br>d/b/a/ THE O'JAYS,<br>    and<br>O'JAYS GIGS, INC.<br><br>    v.<br><br>PHILADELPHIA INTERNATIONAL RECORDS,<br>ASSORTED MUSIC, INC., GAMBLE-HUFF,<br>KENNETH GAMBLE, CHUCK GAMBLE, and<br>LEON HUFF<br><br>    v.<br><br>THE RIGHT STUFF/A DIVISION OF CAPITAL<br>RECORDS, INC. | :<br>:<br>:<br>:    Civil Action No. _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
<u>INJUNCTIVE RELIEF PURSUANT TO FED. R. CIV. P. 65</u>**

1.      Plaintiffs, Edward Levert, Walter Williams, and O'Jays Gigs, Inc. [The O'Jays] seek a temporary restraining order and injunctive relief against Philadelphia International Records, Assorted Music, Inc., Gamble-Huff Productions, Inc., and individual defendants Kenneth Gamble, Chuck Gamble, and Leon Huff [all doing business as Philadelphia International Records and collectively referred to as "PIR"] and against PIR's distributor/licensee, The Right Stuff Division of Capital Records, Inc. [hereinafter "Capital"] , to prevent Defendants' April 6, 2004 release of an album-length compact disc entitled "Together We Are One. "

2.      "Together We Are One" is an unauthorized compilation of certain of The O'Jays' previously recorded but unreleased songs that were included in master recordings made by The O'Jays in PIR studios more than twenty years ago. The songs that comprise this new album-length release were

"vaulted" by PIR for decades as unworthy of release. Release of this stale and artistically inferior material now after more than twenty years, and without the approval and participation of The O'Jays, violates the fiduciary and contractual relationship that has existed between The O'Jays and PIR since at least 1972.

3. Defendants' planned release of this unauthorized album-length compact disc, which wholly consists of previously rejected and unreleased musical recordings that are both stale and artistically substandard, will irreparably harm The O'Jays by tarnishing the musical reputation they have established over the past forty (40) years, by making it more difficult for them to obtain appropriate and appropriately compensated concert bookings and recording contracts with other producers due to the release of artistically inferior recordings, by prejudicing the sale of other <u>new material worthy of The O'Jays' established name,</u> by creating confusion in the music industry and among their fans as to whether The O'Jays have regressed artistically, and by suppressing an unquantifiable number of future sales and royalties through the introduction of a product unworthy of The O'Jays.

4. Prompt injunctive relief to prevent the Defendants' April 6, 2004 release of "Together We Are One" is therefore necessary and required.

## THE PARTIES

5. The O'Jays are highly acclaimed and respected performers with a well deserved reputation for excellence and over fifty hit records in the musical genre known as "Rhythm and Blues." The O'Jays have maintained this excellent reputation over a career that spans more than forty years in the music industry. Few living recording artists have maintained careers of such longevity and prominence.

6. Plaintiff Edward Levert, who, like Plaintiff Walter Williams, is one of the original O'Jays, resides in and is a citizen of Las Vegas, Nevada.

7. Plaintiff Walter Williams resides in and is a citizen of Cleveland, Ohio.

8. Plaintiff O'Jays Gigs, Inc. is incorporated in Ohio with a principal place of business in Cleveland.

9. Defendant PIR is a Philadelphia music recording studio and production company with whom The O'Jays recorded numerous music sound tracks under various contracts from 1972 to 1982.

10. Defendant PIR is incorporated in and a citizen of Pennsylvania. PIR is located at 309 S. Broad Street, Philadelphia, Pa. 19107.

11. Defendant Capital Records is incorporated in Delaware and has a principal place of business in New York City.

## JURISDICTION

12. Jurisdiction is founded on diversity of citizenship under 28 U.S.C. §1332.

13. Jurisdiction is further founded on federal question jurisdiction under 28 U.S.C. §1331 to the extent that some of the royalties withheld by Defendants were owed for lyrics written by Plaintiffs and protected by federal copyright laws.

14. Venue properly lies in the federal district court of the Eastern District of Pennsylvania under 28 U.S.C. §1391(a).

## COUNT I
## REQUEST FOR INJUNCTIVE RELIEF

15. Defendants' anticipated April 6, 2004 release of the stale and sub-standard material selected by them for the album-length compact disc entitled "Together We Are One," will irreparably harm the excellent reputation that The O'Jays have built and heretofore enjoyed in the music industry over the past forty years. This damage to reputation is not quantifiable and can be prevented only by the grant of an immediate restraining order followed by full injunctive relief upon a hearing under Fed. Rule

3

of Civ. P. 65. Pursuant to Rule 65, Plaintiffs have orally and in writing notified Defendants of the filing of this request for injunctive relief and served each of them with a copy of this application.

16. The O'Jays' reputation as recording artists of the highest caliber will be irreparably harmed by the release of the decades-old ("vaulted") and previously rejected sound tracks that comprise "The Together We Are One" project. Because the damage caused by this release cannot be quantified or reduced to a monetary figure, its release must now be enjoined.

17. Defendants' release of the compact disc entitled "Together We Are One," wholly comprised as it is of stale material, will irreparably prejudice The O'Jays by impairing their efforts to grow and preserve their careers through new recording contracts, including contracts with studios other than PIR.

18. Defendants' release of this stale and sub-standard music has the potential to suppress an unquantifiable number of sales of other O'Jays recordings already in the marketplace because potential buyers will perceive this artistically inferior compilation as an example of The O'Jays' most recent artistic offerings, thus prejudicing The O'Jays in their ability to earn unknown future royalty amounts.

19. Moreover, because Defendants are required to make contributions to The O'Jays' health benefits and retirement accounts, and because Defendants' mandated contributions to these accounts are based in part on the royalty amounts earned by The O' Jays through record sales, any diminution in The O'Jays' royalty income will necessarily reduce the amounts available to fund their health benefits and retirement accounts.

20. After more than forty years in the music industry, Plaintiffs Levert and Williams are both at an age where full funding of their health and retirement accounts is a matter of concern and importance to them.

21.  Injunctive relief is now necessary and appropriate to prevent irreparable harm to Plaintiffs, to assure that royalties and expenses are properly reported and accounted, and to maintain the status quo pending the resolution of underlying contractual, fiduciary, and accounting issues between the Parties.

22.  Injunctive relief is appropriate based on the reasonableness of Plaintiffs' request for an immediate restraining order pending a full and prompt hearing on Plaintiffs' injunction request.

23.  Injunctive relief to prevent the irreparable harm outlined above is further supported by the nature and merit of Plaintiffs' underlying claims and the likelihood that Plaintiffs will prevail on their substantive claims against Defendants for breach of contract, unjust enrichment, breach of fiduciary duty, fraud, false and misleading accounting practices, withholding of royalties owed, and fraudulent assessment of recording and other expenses as an offset against the royalties to which Plaintiffs were otherwise entitled.

Wherefore, Plaintiffs respectfully request that the Court, pursuant to Fed. R. Civ. P. 65, enter a Temporary Restraining Order enjoining Defendants from releasing "The Together We Are One" compact disc to retail outlets as planned on April 6, 2004 and for a ten day period thereafter, or until such earlier time as a full hearing can be scheduled consistent with the Court's business.

## COUNT II
### BREACH OF CONTRACT

24.  Despite the irreparable harm to the reputation of The O'Jays, and the unquantifiable financial harm The O'Jays will suffer as a result of release of "Together We Are One," Defendants, without authorization, approval, permission or payment to The O'Jays, have unilaterally determined to manufacture, publish and distribute an album length compact disc consisting of inferior material recorded more than twenty years ago and vaulted for decades.

25. Defendants' anticipated April 6 release of the stale material included by them on the album-length compact disc identified as "Together We Are One," all of which was previously rejected for production, distribution or inclusion in The O'Jays' past albums, contravenes the language and intent of The O'Jays' written contract with PIR. See Exhibit A.

26. Defendants' unilateral decision to release these stale and artistically inferior recordings constitutes a material breach of contract in that Defendants are precluded from releasing under any format, whether compact disc, record, or audiotape, any album-length product consisting of multiple musical selections where those musical selections have been "vaulted" or unreleased for decades. Indeed, given that the contract between Plaintiffs and Defendant PIR anticipated that music recorded thereunder would ordinarily be released within 120 days, (see Exhibit A, paragraph 29(a)), a delay of more that twenty (20) years is neither contemplated nor reasonable under the contractual terms.

27. Further, even if PIR had a right to issue previously rejected, stale, and vaulted material after the passage of one hundred and twenty days, any such release was contractually limited to a 45 rpm single or "unreleased side." See Exhibit A, paragraph 32(f). A "side" is contractually defined as a recording of sufficient length to constitute one side of an rpm single. See Exhibit A, paragraph 22(t). "Together We Are One" is an album-length compact disc and not a previously "unreleased side."

28. Even if Defendants had obtained "The O'Jays' "approval for the album-length "Together We Are One" project, PIR would nonetheless have been required to submit to The O'Jays an estimated budget of projected production and other costs prior to the release. This contractual provision was intended to protect the recording artist from the kind of inflated production and other charges often assessed against the artist. PIR, however, never submitted an estimated budget for this project.

29. Nor have Defendants sought any of the other approvals required by The O'Jays' contract with PIR.

30.     Thus, for example, although PIR is contractually required to obtain The O'Jays' approval prior to any use of their likeness or photograph, Defendants have neither sought nor obtained such approval.

31.     Similarly, by the express terms of its contract with The O'Jays, PIR was additionally required to obtain The O'Jays' specific approval for any album cover, advertisement, or artwork used or intended for the scheduled April 6, 2004 release of "Together We Are One."  See paragraph 30(b). Defendants, however, have not sought or obtained approval for any album cover, artwork, packaging, promotion or advertisement associated with the scheduled release.

32.     Finally, in accordance with the terms of its contract with The O'Jays, see Exhibit A paragraph 32(d), PIR was responsible for payment to The O'Jays of an advance if PIR undertook to cause any previously unreleased master to be manufactured or distributed.  Thus, even if Defendants had a right to release the "Together We Are One" compact disc, they had no right to release or distribute it without first compensating The O'Jays by payment of the appropriate advance.

## COUNT III
## FRAUD, UNJUST ENRICHMENT
## FAILURE TO PAY ROYALTIES OR PROVIDE ACCOUNTING

33.     Despite the fact that The O'Jays have recorded more than fifty (50) hit records, including nine (9) platinum records and ten (10) gold records, all under the PIR label, PIR has not paid The O'Jays anything at all in royalties.  Rather, PIR has maintained and continues to maintain that whatever royalty payments PIR collected on behalf of The O'Jays, were applied instead against the advances already paid to Plaintiffs.  These advances, which were paid against projected sales, and covered the Plaintiffs' expenses for production and promotional costs of the various recording projects, resulted in a "recoupment deficit." Recoupment is an industry term embracing the concept that before an artist receives

royalty payments, he or she must earn enough money in royalties to cover the expenses of production, promotion costs of the project, and any advance payments against projected royalties made to the artist.

33. A recording "turns platinum" when one million units (1,000,000) units have been sold. A "gold" recording is one that has sold five hundred thousand (500,000) units. Few artists ever have this kind of overwhelming success, whereas The O'Jays have achieved these milestones nineteen (19) times.

34. A recoupment account is intended to keep track of the production and promotional costs assessed against the artist as an offset against royalty payments. In this fashion, PIR made certain advances that were then to be paid back over time as royalties accrued. In practice, however, The O'Jays' recoupment account has become a vehicle for PIR's creative accounting practices whereby the recording studio claimed the accrual of new charges, or asserted its discovery of remote, "lost" charges, so that Plaintiffs' recoupment deficit will never be fully eliminated and royalty earnings will never be paid out to the artist.

35. Despite numerous requests to do so, PIR has never provided an itemization of the production and promotional costs assessed against The O'Jays and included in their so-called "recoupment deficit."

36. Although PIR has from time to time claimed that it was investigating certain royalty discrepancies or undertaking an "initiative" to "restructure its royalty payments," PIR has made no effort to share or explain whatever data was uncovered by the supposed investigation, nor has it provided any information concerning a supposed restructuring of royalties.

37. Instead, PIR has responded to the Plaintiffs' royalty and recoupment inquiries by first assessing against The O'Jays in September 2003 supposedly newly discovered expenses ("lost deficits") of almost four hundred thousand dollars. By way of explanation for this assessment, PIR cavalierly and

baldly asserted without any supporting data, detail or itemization, that the "lost" charges (totaling $371,604.10) represented unidentified "unrecouped expenses" not "brought forward" in 1984.

38. Even while refusing to provide the itemization of charges and data that Plaintiffs have heretofore requested, and to which they are entitled, PIR has cavalierly and without apology undertaken to issue "revised" royalty/recoupment statements for Plaintiffs' account long after the original statements were issued. Hence, although PIR has consistently withheld royalties from Plaintiffs without explanation, and although it has refused to itemize the expenses charged against the Plaintiffs' account, PIR has nonetheless undertaken to revisit and revise its accounting thus assessing "lost" charges at its convenience and pleasure. Based on this kind of manipulative accounting, Defendant PIR conveniently claimed a new or enlarged recoupment deficit when Plaintiffs' account reached a point where Defendant became fearful that the deficit would be eliminated and direct royalty payments to the recording artist would be required.

39. Despite its contractual obligation to do so, and despite Plaintiffs' many requests, PIR has thus far refused to provide any accounting at all for fiscal year 2003.

40. PIR has persistently failed to provide itemized information regarding recoupment expenses charged to Plaintiffs royalty accounts; it has belatedly assessed decades old charges purportedly incurred before 1984 but not "brought forward;" and it has failed to provide any financial data whatsoever for fiscal year 2003. Accordingly, PIR has failed to satisfy its obligation to provide meaningful financial statements. PIR's failure to provide meaningful financial statements is tantamount to no statement at all.

41. PIR has further failed to account for or pay royalties for lyrics and songs that Plaintiffs wrote and for which Plaintiffs own the copyright and are entitled to publishing royalties as well.

42. Plaintiffs cannot obtain a reliable accounting review because PIR has variously refused to provide the requested itemizations, claimed a "restructuring" of royalties, issued no statements at all, or issued revised statements years after the initial statements were issued.

9

43. Plaintiffs cannot fully ascertain whether they have been credited for the royalties they earned, whether they have been charged for duplicative recording and production costs, or whether costs associated with the unauthorized release of "Together We Are One" have been improperly charged to The O'Jays' recoupment account.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

44. As a result of their long recording relationship, PIR has fiduciary obligations to Plaintiff to undertake projects and releases that would not harm Plaintiffs' reputation or impair the accrual of royalties owed them for other albums and songs released by PIR.

45. Plaintiffs relied upon PIR's accounting and the financial statements it provided. During the long relationship between Plaintiffs and PIR, from which PIR profited substantially, PIR had an obligation to account to the Plaintiffs with fairness, integrity and accuracy.

46. PIR has instead withheld royalty payments to which Plaintiffs were entitled thereby breaching its fiduciary duties to Plaintiffs, and diminishing Plaintiffs rights to health benefits and retirement income.

47. PIR has also bloated Plaintiffs' recoupment deficits, assessed inaccurate and unexplained charges, all in an effort to avoid the payment of royalties properly owed to Plaintiffs. In so doing, Defendants have wasted Plaintiffs' assets and breached their duties of trust.

48. Defendant's breach of trust and failure to honor its obligation as a fiduciary of the royalties earned by Plaintiffs and owed to them, requires the payment of compensatory and punitive damages.

Wherefore, for the foregoing reasons, Plaintiffs request that Defendants be enjoined from releasing for retail sale on April 6, 2004 the compact disc recording entitled "Together We Are One."

Plaintiffs further request compensatory and punitive damages for breach of contract, breach of fiduciary duty, fraud, unjust enrichment, and copyright infringement, as well as attorney fees and costs.

        Respectfully submitted,

        **GRANT & LEBOWITZ, LLC**

_____
Ann C. Lebowitz, Esquire
Attorney I.D. No. 22243


_____
Charles J. Grant, Esquire
Attorney I.D. No. 35008

1818 Market Street, Suite 3301
Philadelphia, PA 19103
(215) 789-3100
Attorneys for Plaintiffs,
Eddie Levert, Sr., Walter Williams, Sr.,
The O'Jays, and O'Jays Gigs, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of Plaintiffs' Complaint and Application for Temporary Restraining Order and Injunctive Relief, Pursuant to Fed. R. Civ. P. 65 in the above-captioned matter has been served on this date, by facsimile transmission and Federal Express delivery, on the Defendants at the following addresses:

Oren J. Warshavsky, Esquire
**GIBBONS DEL DEO, DOLAN & GRIFFINGER & VECCHIONE, P.C.**
One Pennsylvania Plaza, 37th Floor
New York, NY 10119
(via Federal Express Delivery <u>and</u> facsimile)
*Attorney for Defendant Philadelphia International Records*

Christos Badavas, Esquire
*Director of Legal Affairs*
**CAPITAL RECORDS/EMI**
150 Fifth Avenue, 11th Floor
New York, NY 10011
(via facsimile)
*Attorney for Defendant Capital Records/EMI*

_____
Ann C. Lebowitz, Esquire

Date: **April 6, 2004**