IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDDIE LEVERT and WALTER WILLIAMS, d/b/a/ THE O'JAYS,

PLAINTIFFS,

v.

PHILADELPHIA INTERNATIONAL RECORDS, ASSORTED MUSIC, INC., GAMBLE-HUFF PRODUCTIONS, KENNETH GAMBLE, CHUCK GAMBLE, LEON HUFF, and THE RIGHT STUFF/A DIVISION OF CAPITOL RECORDS, INC.,

DEFENDANTS.

Civil Action No. 04-1489

DOCUMENT ELECTRONICALLY FILED

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendants, Assorted Music, Inc. d/b/a Philadelphia International Records ("PIR"), Kenneth Gamble, Leon Huff, Chuck Gamble and Gamble-Huff Productions (collectively "Defendants") respectfully submit this memorandum and the accompanying declarations of Philip S. Asbury, Esq. and Denis James Lawler, Esq. as well as the exhibits annexed thereto, in support of their motion to enforce the settlement agreement reached between Defendants and Plaintiffs Eddie Levert ("Levert") and Walter Williams ("Williams") (collectively, "Plaintiffs").

**I.     SUMMARY OF THE INSTANT MOTION**

In the presence of the Court, the parties reached a settlement. Defendants simply seek the enforcement of that settlement.

## II. FACTUAL BACKGROUND

As the Court is aware, the parties met for a settlement conference with the Court on Wednesday, November 16, 2005. That day, a settlement was reached. The settlement terms were: (1) the Defendants would make a payment of $400,000.00; (2) the Defendants would provide a "Letter of Direction" to Sony, whereby Sony would directly account to and pay Plaintiffs their artist royalties for the exploitation of their recordings; (3) both parties would be released through June 30, 2005; and (4) the parties agreed that the settlement was to be confidential. See Lawler Dec. at ¶ 2.

The parties now are stuck. The parties have exchanged drafts of settlement agreements. The most recent "redline" proffered by Plaintiffs' counsel was accompanied by the threat that unless Defendants agree, Plaintiffs will seek to have the action reinstated. A copy of the last proposed settlement agreement submitted by Defendants to Plaintiffs is attached. See Lawler Dec. Ex. 1. A "redline" copy of the last proposed settlement, with Plaintiffs' proposed changes indicated also is attached. See Lawler Dec. Ex. 2.

The portion added by the Plaintiffs contains a provision that Defendants agree to refrain from contacting and/or discussing with Sony any issues related to Plaintiffs' royalties. Id. at ¶ 3.2. This goes well beyond the scope of the agreement reached between the parties. While Defendants are content to agree to refrain from "interfering", Defendants can not be precluded from discussing matters with its contract partners. See Asbury Dec. at ¶ 2. Further, it is very likely that Defendants will be contacted by Sony at various times, and a contractual provision of this nature presents an unworkable relationship. Id. at ¶ 3.

The real issue of contention revolves around the Letter of Direction. Sony requires very specific language in a Letter of Direction. Id. at ¶ 4. PIR has worked on these issues and Letters

2
108853.00603/21465555v.2

of Direction with Sony in the past. Id. at ¶ 5. Sony requires that the Letter of Direction detail how all types of income are to be paid. Id. Plaintiffs refuse to agree to the language of the Letter of Direction because they do not like some of the underlying contractual terms recited. Essentially, Plaintiffs seek to use this settlement as a platform for renegotiating the underlying contracts between the parties. Yet, the settlement agreement reached never anticipated a renegotiation – let alone a reformation – of the underlying contractual terms.

Two of the contracts between the parties do not require PIR to credit Plaintiffs for certain types of exploitation (for instance, use of the recordings at issue in feature films). However, PIR has in the past always credited Plaintiffs for such exploitation – and continues to credit Plaintiffs on such exploitation. Id. at ¶ 6. For these exploitations, PIR has credited Plaintiffs with the same royalty rate specified for other exploitations (e.g. for the use on audio carriers, such as compact discs). Id. Plaintiffs now demand that PIR either: (i) agree to have Sony pay to Plaintiffs a higher royalty rate for such exploitations, or (ii) not direct Sony how to make payments. See Lawler Dec. at Ex. 3, which is a copy of the most recent version of the Letter of Direction and Lawler Dec. at Ex. 4, which is a "redline" of the most recent version of the Letter of Direction containing the Plaintiffs' requested revisions. Neither of these options is tenable. To be clear, the Letter of Direction must contain strict instructions how royalties to Plaintiffs are to be calculated and paid for all types of exploitation. See Asbury Dec. at ¶¶ 4, 5.

Additionally, Plaintiffs also seek to deprive PIR of the right to specify that Sony make the contractual deductions necessary. See Lawler Dec. at Ex. 4. Again, this puts PIR in an untenable position, as: (1) these deductions are made against PIR; and (2) if they are not made against Plaintiffs, PIR suffers a greater deduction. See Asbury Dec. at ¶¶ 6, 7.

3

It should be noted that during the negotiations concerning the documentation of the settlement, Plaintiffs also argued that they should be entitled to a higher royalty rate on one particular album. Id. at ¶ 8. For purposes of settlement only, PIR agreed to pay the higher royalty – even though there was no factual basis for Plaintiffs' argument. Id.

Finally, Plaintiffs have now urged that they be entitled to receive so-called producer royalties directly from Sony. This was never previously addressed in the settlement discussions. Although not a part of the original agreement, PIR agreed to that request. Id. at ¶ 9. Once again, however, Plaintiffs are seeking a royalty rate much higher than that which is in the contracts. Id.

The issues regarding the Plaintiffs' requests for additional contractual concessions are beyond the scope of this case and should not be used as an excuse to avoid executing the settlement agreement.

### III. LEGAL ARGUMENT

At the settlement conference on November 16, 2005, the parties reached an agreement to settle the instant litigation. Plaintiffs should be compelled to execute the proposed settlement agreement, without modification, to resolve the litigation.[1]

#### A. An Agreement to Settle Litigation is a Valid and Enforceable Contract.

A federal district court has jurisdiction to enforce a settlement agreement entered into by the parties to a cause of action pending therein, and as part of its enforcement power, to award damages for breach of such an agreement, Hobbs & Company, Inc. v. American Investors Management, Inc., 576 F.2d 29 (3d Cir. 1978); Kelly v. Greer, 365 F.2d 669 (3d Cir. 1966); Pugh v. Super Fresh Food Markets, Inc., 640 F.Supp. 1306, 1307 (E.D.Pa. 1986). In diversity

---

[1] The November 17, 2005 Order of the Court dismissed the case pursuant to Local Rule 41.1(b). Pursuant to Local Rule 41.1(b), the Court retains jurisdiction for ninety (90) days so that the Order can be "vacated, modified, or stricken…." Therefore, the Court retains jurisdiction over this case until 90 days following the entry of the Order (i.e., February 15, 2006).

4

cases such as the present matter, where the substantive rights and liabilities of the parties do not derive from federal law, questions regarding the validity of an alleged settlement agreement are determined by state law.  See Cooper Labs, Inc. v. International Surplus Lines Ins. Co., 802 F.2d 667, 672 (3d Cir. 1986).  The question of whether parties have entered into an enforceable settlement is governed by Pennsylvania contract law.  Mazzella v. Koken, 559 Pa. 216, 739 A.2d 531, 536 (Pa. 1999); Main Line Theatres, Inc. v. Paramount, 298 F.2d 801, 803 (3d Cir. 1962).  Thus, in evaluating a settlement, the Court looks to whether a valid contract was formed.

Under the law of Pennsylvania, a contract is formed when the parties have manifested an intent to be bound by the terms of an agreement and the terms are sufficiently definite to be enforced.  Channel Home Centers v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986).  An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court and even in the absence of a writing.  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970); Main Line Theatres, Inc. v. Paramount, 298 F.2d 801, 803 (3d Cir. 1962).  A contract exists when the parties mutually assent to the essential terms and conditions of the settlement.  Field v. Golden Triangle Broadcasting, Inc., 451 Pa. 410, 305 A.2d 689, 693 (Pa. 1973); Pugh, supra, 640 F.Supp. at 1308 (citing Main Line Theatres, Inc. v. Paramount Film Distribution Corp., 298 F.2d 801, 803 (3d Cir. 1962).  Importantly, once the parties have mutually assented to the essential terms and manifested an intent to be bound by those terms, "the existence of gaps in the agreement will not vitiate it."  Forte Sports, Inc. v. Toy Airplane Gliders of America, Inc., 371 F.Supp.2d 648, 649 (E.D.Pa 2004).

Further, it is well established in this district that a "settlement agreement is still binding even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing."  Pugh, supra, 640 F.Supp. at 1308;

5

Gross v. Penn Mutual Life Ins., Co., 396 F.Supp. 373, 375 (E.D. Pa. 1975).  A plaintiff is bound by a settlement agreement, when he orally consents to it before the court, even if he later refuses to sign the agreement.  See Gray v. Hygrade Food Products Associates, 2001 U.S.Dist. LEXIS 16389 (E.D.Pa. 2001)(citing Mattingly v. City of Chicago, 897 F.Supp. 375, 376-377 (N.D.Ill. 1995).

On November 16, 2005, the parties reached a settlement agreement.  The terms of that settlement should be enforced and Plaintiffs should not be allowed to thwart the settlement by attempting to seek additional concessions.  Plaintiffs' attempts to extract additional concessions from Defendants do not justify or excuse their failure to execute the settlement agreement.

    **B.    The Parties' Agreement to Settle the Litigation Made in Chambers on November 16, 2005 is a Valid and Enforceable Contract and Should be Enforced.**

In the instant case, the parties walked away from the November 16, 2005 settlement conference with an oral settlement agreement.  The agreement was reached in the presence of the Court. All parties, and their counsel, agreed to the essential terms of the settlement.  The terms of the agreement were sufficiently definite for the parties to render performance.  The settlement terms were: (1) the Defendants would make a payment of $400,000.00; (2) the Defendants would provide a "Letter of Direction" to Sony, whereby Sony would directly account to and pay Plaintiffs their artist royalties for the exploitation of their recordings; (3) both parties would be released through June 30, 2005; and (4) the parties agreed that the settlement would be confidential.  See Lawler Dec. at ¶ 2.

The parties and their attorneys agreed in the presence of the Court to these terms of the settlement.  In fact, the Plaintiffs do not dispute that these terms and conditions are the basis for the settlement.  Rather, the Plaintiffs are seeking to interject into the Letter of Direction

6

provisions which have the effect of changing elements of the underlying contracts between Plaintiffs and Defendants.

Just like the defendant in Forte Sports, supra., Plaintiffs here are seeking to insert terms into a settlement agreement that were not discussed during the settlement negotiations. In Forte Sports, supra., in response to a motion to enforce a settlement agreement, the defendant argued that the refusal to include certain warranties regarding the validity and use of trademarks in the written settlement agreement meant that the parties did not have a settlement agreement. Id. at 651. The Court disagreed and stated that the essential terms of the settlement were established:

> "The dismissal of Forte's action with prejudice and with each party to bear its own attorneys' fees, the payment of $40,000 to Forte, the transfer of whatever rights Forte alleges in the mark 'Bungee Ball' to Toy Airplane, and dismissal of Forte's cancellation proceeding in the Trademark Office against Toy Airplane's mark 'Bungy Ball' constitute the essential terms of the parties' agreement. The terms are precise and definite and nothing of significance is missing."

Id. at 650.

After concluding that the essential terms were in place, the Court stated that a written settlement agreement was contemplated merely to "memorialize the provisions to which the parties had agreed and was not a loophole for further negotiations." Id. The same conclusion applies here. Plaintiffs are seeking to renegotiate contracts between them and Defendants under the guise of documenting a previously agreed to settlement consisting of definitive terms. Plaintiffs' efforts to use the documentation of the settlement as a "loophole for further negotiations" should be prohibited.

Plaintiffs' refusal to execute a settlement agreement and general release documenting the terms of the settlement reached before the Court on November 16, 2005, is a breach of the

7

settlement contract.  Defendants are entitled to have the settlement agreement enforced and an Order entered directing Plaintiffs to execute the latest settlement agreement proposed by Defendants.

          Respectfully submitted,

          GIBBONS, DEL DEO, DOLAN,
          GRIFFINGER & VECCHIONE
          A Professional Corporation
          One Pennsylvania Plaza, 37th Floor
          New York, NY 10019-3701
          Tel:    212-649-4700
          Fax:   973-639-8380

          AND

          BLANK ROME LLP

Dated:  February 13, 2006     BY:    s/Denis James Lawler
                                                  Validation of Signature Code:  DJL2858
                                                  DENIS JAMES LAWLER
                                                  Attorney I.D. No. 17154
                                                  One Logan Square
                                                  Philadelphia, PA 19103-6998
                                                  Tel:    215-569-5550
                                                  Fax:   215-832-5550

                                                  Attorneys for Defendants